IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR CLARK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01165-STA-jay |
| | ) | |
| GRADY PERRY, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Victor Clark has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons that follow, the Petition is **DENIED**.[1]

## BACKGROUND

In 2013, a Madison County, Tennessee, grand jury charged Clark with two counts of attempted second degree murder, two counts of aggravated assault, one count of reckless endangerment, and one count of employing a firearm during the commission of a dangerous offense. (ECF No. 19-1 at 6-12.) His co-defendant, Kentavis Jones, was similarly charged. (*Id.*) The defendants were tried together. (ECF No. 19-5.)

---

[1] The Clerk is **DIRECTED** to substitute Grady Perry for Shawn Phillips as Respondent. *See* Fed. R. Civ. P. 25(d).

At the jury trial, the victims, Luteika Tyus and Antonio White, testified to events that transpired at their home on the day of the offenses. *Clark v. State*, No. W2015-00186-CCA-R3-PC, 2016 WL 1250985, at *1-2 (Tenn. Crim. App. Mar. 30, 2016). According to both witnesses, Tyus and Clark's mother were engaged in an "altercation . . . regarding messages . . . Tyus had written on Facebook alleging that [Clark] had broken into [their] home." *Id.* at *1. After the altercation moved outside, Tyus "saw [Clark] and [his co-defendant] Jones exit the alley next to [her] home." *Id.* "As [the men] approached, . . . Tyus asked . . . White to come outside." *Id.* White testified that he exited the house "with a gun and told [Clark] 'Stay over there on your side of the street and don't come over here because I've got something for you.'" *Id.* After White and Tyus "went back inside their home, [Clark] and . . . Jones fired several shots at [the] house." *Id.* A bullet struck Tyus's hand. *Id.* White testified that he believed that a third individual had fired into the back of the home. *Id.*

On cross-examination, White "admitted that he had 'an issue' with [Clark] because [Clark] had broken into his house and truck and [had] stolen some of his property," but he also conceded that "no charges [had been] filed against" the defendant. *Id.* He acknowledged that, inconsistent with his trial testimony, the written statement he gave to the police "only identified [Clark] as the shooter and did not mention . . . Jones." *Id.* He insisted that he told the officer that Jones was one of the shooters, but that the officer "wrote down [his] statement incorrectly." *Id.*

Tyus admitted on cross-examination "that she called . . . White outside before the shooting because she wanted him to fight" Clark. *Id.* Although she had testified that "she did not see . . . White carrying a gun when he came outside," she conceded that she testified at the preliminary hearing that White had a gun "out." *Id.* (internal quotation marks omitted). Tyus

"admitted that she did not like" Clark, and that "prior to the shooting, she posted a comment on Ghetto News about" Clark and Jones stealing from their neighbors. *Id.* at *1-2.

The defense did not present any proof. *Id.* at *2. The jury acquitted Clark on both counts of attempted second degree murder, and convicted him on two counts of aggravated assault, reckless endangerment, and employing a firearm during the commission of a felony. *Id.* A notice of appeal was filed, but the appeal was later voluntarily dismissed by Petitioner through his appointed counsel. (ECF No. 19-9 at 1-4.)

Clark filed a *pro se* post-conviction petition in state court (ECF No. 19-11 at 3-16), which was amended by appointed counsel (*id.* at 28-33). Following an evidentiary hearing, the post-conviction trial court denied relief (*id.* at 38-42), and the TCCA affirmed, *Clark*, 2016 WL 1250985, at *6.

On June 17, 2016, Clark filed his Petition. He asserts that "[t]he court erred in giving any significant weight to the testimony of the alleged victims due to the inconsistencies [in their] statements" (Claim 1), that the evidence was insufficient to support his conviction for employing a firearm during the commission of a dangerous felony (Claim 2), and that his trial counsel rendered ineffective assistance by "refus[ing] to allow [him] to testify and present [a] self-defense theory" (Claim 3) and by failing to call a defense witness (Claim 4). (ECF No. 1 at 5, 6, 8, 10.)

## DISCUSSION

Respondent, Grady Perry, filed the state-court record (ECF No. 19) and an answer (ECF No. 20) to the Petition. He argues that one of Petitioner's claims must be denied on the merits, and the remaining claims are not properly before the Court because they are procedurally defaulted. Petitioner did not file a reply, although allowed to do so. (*See* ECF No. 10 at 2.)

3

## I. Legal Standards

### A. Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first

instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent

of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was

6

"within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.    Claims 1 and 2

Petitioner asserts two trial errors. In Claim 1, he contends that the trial court should not have given "any significant weight" to the victims' testimonies. (ECF No. 1 at 5.) He points out that Luteika Tyus's testimony at trial was, in some respects, inconsistent with Antonio White's trial testimony and with her own preliminary hearing testimony, and that White's trial testimony was inconsistent at times with his written statement to the police. In Claim 2, Clark maintains that the evidence was insufficient to convict him of employing a firearm during a dangerous felony because the jury acquitted him of attempted second degree murder. Respondent argues that the claims are procedurally defaulted, and should therefore be dismissed. The Court agrees.

Clark did not raise these issues on direct appeal because he voluntarily withdrew his appeal. The time has since passed for him to raise these alleged trial errors to the appellate court.[2] *See* Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.").

Petitioner nevertheless argues that he failed to exhaust the claims because he had "bad counsel performance." (ECF No. 1 at 5, 7.) Assuming he means to suggest that his attorney's ineffective assistance caused him to default the issues, the argument is without merit. Trial counsel, who was also appellate counsel, raised both issues in her motion for a new trial. (*See* ECF No. 19-1 at 56-57.) On direct appeal, Clark, not his attorney, defaulted the claims when he

---

[2]    After briefing was completed in this case, Petitioner filed a petition for writ of habeas corpus in state court arguing that his firearms conviction was void because it was inconsistent with the attempted second degree murder acquittals. *See Clark v. Lindamood*, No. M2018-00134-CCA-R3-HC, 2018 WL 4817909, at *1 (Tenn. Crim. App. Oct. 4, 2018), *perm. appeal denied* (Tenn. Feb. 20, 2019). On appeal from the dismissal of Clark's petition, the TCCA noted that, to the extent Clark meant to complain that the evidence was insufficient to convict him of the firearms offense, the state habeas procedure was not the correct avenue for such a challenge, and that the issue should, instead, have been brought on direct appeal. *Id.* at *3.

voluntarily dismissed the appeal.³ (*See* ECF No. 19-9 at 1 (motion for voluntary dismissal quoting Clark's letter to counsel in which he complained that the court was "forc[ing] [him] to proceed on appeal with representation of counsel," and that he "knowingly" wished "to seek voluntary dismissal of [the] direct appeal"); ECF No. 19-12 at 44-45 (counsel testified that she "encouraged [Clark] to appeal," that she "strongly felt" at the time "that he had a great case for appeal," that she "attempted to . . . get him new [appellate] counsel" when she learned he was unhappy with her representation, and that he nevertheless "insisted that [the appeal] be completely dismissed.").)

Because Petitioner procedurally defaulted Claims 1 and 2, and has not established cause to excuse the defaults, the claims are **DISMISSED.**

## III.    Claim 3

Petitioner asserts that his attorney provided ineffective assistance by "refus[ing] to allow [him] to testify and present [a] self-defense theory." (ECF No. 1 at 8.) Respondent maintains that Clark procedurally defaulted his argument that his attorney should have let him testify in support of a self-defense theory (hereinafter "Claim 3A") because he did not raise that issue in the post-conviction proceedings. Respondent concedes that Clark's assertion that counsel should, generally, have pursued a self-defense theory (hereinafter "Claim 3B") was presented to

---

³ Even if Petitioner intended, in Claim 2, to assert an ineffective-assistance claim—*i.e.*, that his trial counsel was ineffective for failing to properly cross-examine the victims about their inconsistent testimonies—he still would not be entitled to relief. The argument was presented in the post-conviction appeal (*see* ECF No. 19-13 at 10), and the TCCA's rejection of it easily passes muster under the AEDPA's standards. The appellate court correctly identified *Strickland*'s standards and applied them to the facts. *See Clark*, 2016 WL 1250985, at *5, 6. The court's factual determination that counsel "extensively cross-examined the victims about their prior inconsistent statements," *id.* at *6, is borne out by the trial transcript. (*See* ECF No. 19-5 at 55-56, 58-60, 102-06, 116-18.) The TCCA's conclusion that counsel, therefore, did not render ineffective assistance, *see Clark*, 2016 WL 1250985, at *6, was patently reasonable.

9

the TCCA, but he maintains that the appellate court's rejection of the argument survives AEDPA review.

Clark did not present Claim 3A to either the post-conviction court or the TCCA. (*See* ECF No. 19-11 at 3-15, 28-32; ECF No. 19-13 at 10.) The claim is therefore procedurally defaulted. Petitioner alleges that the default was the result of "bad advice and performances from counsels." (ECF No. 1 at 8.) The Court construes the allegation as an argument, pursuant to *Martinez*, that post-conviction trial counsel's failure to raise the issue is cause to excuse the procedural default. *Martinez* holds that the ineffective assistance of counsel during the initial post-conviction proceeding is cause to excuse a "substantial" ineffective assistance of trial counsel claim. *Martinez*, 566 U.S. at 17.

Clark's claim that trial counsel was ineffective in failing to call Petitioner to testify that he was acting in self-defense is not substantial. Counsel testified that her client always insisted that "he was never" at the scene of the crimes.[4] (ECF No. 19-12 at 47.) In fact, even at the post-conviction hearing, Clark maintained that he was not present when the events occurred. (ECF No. 19-12 at 30-32.) Because his testimony at trial would not have advanced a self-defense theory, counsel did not perform deficiently by deciding not to call him to testify, and no prejudice resulted from that decision.

As Claim 3A is not a substantial claim of attorney ineffective assistance, the procedural default is unexcused. The claim is **DISMISSED**.

Claim 3B is properly before this Court because Clark raised it in his post-conviction appeal. *See Clark*, 2016 WL 1250985, at *2. The TCCA identified *Strickland*'s two-part test, *id.*

---

[4] Although post-conviction counsel did not present Claim 3A to the post-conviction trial court, the State developed evidence at the post-conviction hearing that now bears on whether that claim is substantial.

at *5, and, applying the test to the record, determined that counsel had not provided ineffective assistance:

> In its order denying post-conviction relief, the post-conviction court specifically credited trial counsel's testimony. The post-conviction court noted that the Petitioner claimed he was never at the scene of the shooting. As such, trial counsel's defense strategy was to highlight the inconsistencies between the victims' respective stories to call into doubt their identification of the Petitioner as one of the shooters.
>
> * * *
>
> In order to plead self-defense, a defendant must have a genuine, well-founded fear that he was in danger of death or great bodily harm and that the actions he took were necessary in self-defense. *See State v. McCray,* 512 S.W.2d 263, 265 (Tenn. 1974); *State v. Ivy,* 868 S.W.2d 724, 727 (Tenn. Crim. App.1993). Logically, a defendant asserting a theory of self-defense must admit that he was present at the scene of the offense, that he feared he was in danger of death or serious bodily harm, and that he took action against another individual to protect himself from that harm. In this case, the Petitioner denied, and continues to deny, that he was present at the scene of the offense. As such, trial counsel was not deficient for failing to present a self-defense theory at trial.

*Id.* at *4, 6.

Because the appellate court correctly identified *Strickland*'s standards, its determination that counsel did not provide ineffective assistance is not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

What is more, the factual finding that Petitioner always insisted to counsel that he was not at the crime scene is not unreasonable. The post-conviction trial court specifically credited counsel's testimony in that respect (*see* ECF No. 19-11 at 39), and the TCCA declined to disturb that credibility determination. Petitioner's refusal at the post-conviction hearing to admit that he was present at the crime scene served to corroborate counsel's testimony. As Petitioner has not

provided clear and convincing evidence to undermine the factual determination, he has not shown that it was unreasonable.

Based on the facts adduced, the TCCA's conclusion that counsel did not perform deficiently in declining to pursue a self-defense theory, and that Petitioner was not prejudiced, was not an unreasonable application of *Strickland*'s standards to Clark's case. Claim 3B is **DENIED**.

## IV. Claim 4

Petitioner asserts that trial counsel rendered ineffective assistance by "summon[ing] defendant's witness to court during [his] trial," but failing to present that witness to the jury. (ECF No. 1 at 10.) The claim is procedurally defaulted because it was not raised in the post-conviction proceedings. (*See* ECF No. 19-11 at 3-15, 28-32; ECF No. 19-13 at 10.)

Clark argues that the cause of the default was "poor performance from appeal counsel." (ECF No. 1 at 10.) Assuming Clark means to suggest that post-conviction appellate counsel's failure to raise the issue to the TCCA is cause to excuse the default, the argument is unavailing. The "assertion that ineffective assistance of postconviction appellate counsel [can] serve as cause" to excuse the default of an ineffective-assistance-of-trial-counsel claim "is firmly foreclosed by Supreme Court and Sixth Circuit precedent." *Young v. Westbrooks*, 702 F. App'x 255, 268 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 742-53; *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)). The procedural default is therefore not excused. Claim 4 is **DISMISSED**.

For all of these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[5]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 22, 2019

---

[5] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.